SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

DAVID WIDBY,                                    )
                                                )
            Plaintiff,                          )
                                                )
v.                                              )
                                                )
STATE FARM MUTUAL AUTOMOBILE                    )
INSURANCE COMPANY OF BLOOMINGTON,               )
ILLINOIS and MICHELLE L. GARNER,                )
                                                )
            Defendants.                         )  CASE NO. 3AN-08- 7860 CI
_____)

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AND, IN THE ALTERNATIVE, FOR UIM BENEFITS

COMES NOW Plaintiff, David Widby, by and through his attorneys of record, the Law Offices of Michael J. Schneider, P.C., and for his complaint against State Farm Mutual Automobile Insurance Company of Bloomington, Illinois (hereinafter "State Farm") does allege as follows:

### I. The Parties

1.  David Widby is a resident of the State of Alaska, Third Judicial District.

2.  Defendant, State Farm, is a corporate resident of Illinois, doing business in Alaska under Alaska Business License No. 283864, with corporate headquarters at One State Farm Plaza, N-C, Bloomington, Illinois, 61710.

3.  Michelle L. Garner is a claim representative employed by State Farm who, to the best of Plaintiff's knowledge and belief, is a resident of the Third Judicial District of the State of Alaska. Ms. Garner was, at all relevant times, acting within the course and scope of her employment with State Farm.

### II. The State Farm Policies

4.  Mr. Widby is an additional, or a named, insured on three separate State Farm policies as follows:

LAW OFFICES
MICHAEL J. SCHNEIDER, P.C.
880 "N" STREET, SUITE 202
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 277-9306
FAX (907) 274-8201

PAGE __1__ EXHIBIT __C__

*Complaint - Widby v. State Farm*                                        1

| Exhibit 1 | Policy No. 0130-976-02 covering a 2000 Toyota 4-Runner Sport Wagon (the crash vehicle). |
|---|---|
| Exhibit 2 | Policy No. 0128-953-02 covering a 1998 Chevrolet Lumina, 4-door, wherein David A. Widby is a named insured. |
| Exhibit 3 | Policy No. 0173-266-02 covering a 1992 Mitsubishi Expo, 4-door, wherein Kristine Widby is a named insured. |

These policies, including their Certificates of Coverage, are attached hereto as provided by State Farm to Widby.

The Certificate of Coverage for Exhibit 1 purports to include an endorsement numbered 6127BN. Same was not included in the material delivered to Widby by State Farm, all of which is included in Exhibit 1. This Complaint for declaratory judgment and for an injunction is filed, and relies, upon State Farm's representation that Endorsement 6127BN properly a part of the Exhibit 1 policy. Widby is unable to concede the accuracy of this assumption without further discovery.

### III. General Allegations

5.  On or about June 1, 2006, Kristine E. Walker-Widby was driving her 2000 Toyota, License No. EKV 119, and insured by State Farm under the policy found at Exhibit 1 to this Complaint, eastbound on East 68th Avenue, in Anchorage, Alaska. She was approaching the intersection with Tondi Lane. She had her right turn signal on and intended to turn right, or south, onto Tondi Lane. Just before the turn, the Widby vehicle was struck violently in the rear by a vehicle operated by Schonel C. Sharp.

6.  Mrs. Walker-Widby, Mr. Widby, Mr. and Mrs. Widby's daughter, Ms. Sharp, and one or more of Ms. Sharp's passengers were injured in the crash.

7.  David Widby was a restrained front-seat passenger in the vehicle operated by his wife, Kristine, at the time of the crash.

8.  Neither Kristine Walker-Widby nor David Widby were at fault in causing the crash, or any of David Widby's resulting injuries or damages.

LAW OFFICES
MICHAEL J. SCHNEIDER, P.C.
880 "N" STREET, SUITE 202
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 277-9306
FAX (907) 274-8201

LAW OFFICES
MICHAEL J. SCHNEIDER, P.C.
880 "N" STREET, SUITE 202
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 277-9306
FAX (907) 274-8201

9.     The defendant driver, Mr. Sharp, was insured under a GEICO liability policy with nominal limits of $50,000.00, plus exposure for prejudgment interest and Alaska R. Civ. P. 82 attorney fees.

10.    Mr. Widby was entitled to medical payments coverage from State Farm under the policy affixed as Exhibit 1 hereto with maximum limits of $25,000.00. Mr. Widby made claim for various medical bills and, ultimately, by approximately mid March of 2007, State Farm paid its entire $25,000.00 medical payment coverage limit to Mr. Widby's medical care providers.

11.    Mr. Widby sought from Sharp's liability carrier, GEICO, its bodily injury policy limits and, ultimately, via check dated 10/31/07, received same in the amount of $64,287.98. See Exhibit 4.

12.    As part and parcel of Mr. Widby's settlement with Sharp/GEICO, Widby and State Farm agreed:

   A.     That the proposed settlement in the amount of $64,287.98 with GEICO/Sharp "exhausted" Sharp's liability limits and, indeed, exhausted the limits of all liability bonds and policies exposed by the circumstances of the June 1, 2006, crash.

   B.     That State Farm consented to the settlement and that Widby could go forward to consummate same.

   C.     That State Farm waived any subrogation right it might have against the liability settlement as a consequence of its payment of $25,000.00 in medical payments coverage benefits to Widby under the policy attached as Exhibit 1.

   D.     That Widby could give a full release to GEICO and Sharp as part of consummating the third party liability settlement.

13.    Mr. Widby is of the good faith belief that his damages are greater than the sum of the GEICO/Sharp liability settlement, the $25,000.00 medical payment coverage benefits received via State Farm/Exhibit 1, and payments made on his behalf by any other exposed health insurance carrier.

*Complaint - Widby v. State Farm*                    PAGE __3__ EXHIBIT __C__          3

14.   Mr. Widby seeks additional underinsured motorist benefits from State Farm under one or more of the policies attached hereto as Exhibit 1 through 3.

15.   Exhibit 1 (the policy on the accident vehicle) is, under AS 28.20.445(c)(2) and/or AS 28.22.221(2), the first exposed State Farm policy under all the facts and circumstances of this case. Exhibit 2 identifying Mr. Widby as a named insured is, under AS 28.20.445(c)(3) and/or AS 28.22.221(3), the second potentially exposed State Farm policy under all the facts and circumstances of this case. Exhibit 3 under which Mr. Widby is an additional insured and naming Mrs. Widby as a named insured is, under AS 28.20.445(c)(4) and/or AS 28.22.221(4), the third potentially exposed State Farm policy under all the facts and circumstances of this case.

16.   Defendants contend that the policy (Exhibit 1) contains its Endorsement 6127BN which, under the facts and circumstances of this matter, obligate Mr. Widby to sue State Farm on or before the second anniversary of the crash. Mr. Widby does not want to file such proceedings and prefers to assert his claims within three years of any denial by State Farm of his UIM claim. He further prefers to resolve his disputes, if any there ultimately be, with State Farm by way of arbitration.

17.   Defendants have refused to arbitrate and have demanded compliance with State Farm's Endorsement 6127BN and have affirmatively asserted that same controls the rights of the parties as to Exhibits 1 and Exhibit 3, should Exhibit 3 ultimately be exposed by the facts and circumstances of the case.

### IV. First Cause of Action–Declaratory and Injunctive Relief

18.   Mr. Widby's contract rights under Exhibits 1 through 3 are "personal property" under Alaska law.

19.   The State Farm policies affixed as Exhibits 1 and 3 are motor vehicle or similar policies issued or delivered in the State of Alaska.

20.   The State Farm policies, affixed hereto as Exhibits 1 and 3, are policies providing property coverage issued or delivered in the State of Alaska.

LAW OFFICES
MICHAEL J. SCHNEIDER, P.C.
880 "N" STREET, SUITE 202
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 277-9306
FAX (907) 274-8201

*Complaint - Widby v. State Farm*

PAGE _4_ EXHIBIT _C_

4

21. The State Farm policies, Exhibits 1 and 3, are policies providing first party property and/or casualty coverage issued or delivered in the State of Alaska.

22. AS 21.89.035 states in full as follows:

> Mandatory appraisal. A motor vehicle or similar policy, a policy providing property coverage, or any other policy providing first party property, casualty, or inland marine coverage, issued or delivered in this state, must include an appraisal clause providing a contractual means to resolve a dispute between the insured and the insurer over the value of a covered first party loss for real property, personal property, business property, or similar risks. If the insured and the insurer fail to agree on the amount of a covered first party loss, either may make written demand upon the other to submit the dispute for appraisal. Within 10 days of the written demand, the insured and insurer must notify the other of the competent appraiser each has selected. The two appraisers will promptly choose a competent and impartial umpire. Not later than 15 days after the umpire has been chosen, unless the time period is extended by the umpire, each appraiser will separately state in writing the amount of the loss. If the appraisers submit a written report of agreement on the amount of the loss, the agreed amount will be binding upon the insured and insurer. If the appraisers fail to agree, the appraisers will promptly submit their differences to the umpire. A decision agreed to by one of the appraisers and the umpire will be binding upon the insured and insurer. All expenses and fees, not including counsel or adjuster fees, incurred because of the appraisal shall be paid as determined by the umpire. Except as specifically provided, nothing in this section is intended to or shall in any manner limit or restrict the rights of insureds or insurers or confer any rights to an insured or insurer.

23. AS 21.12.070(a) defines "Casualty Insurance" to include:

> (a) Casualty insurance includes
>
> (1) vehicle insurance: insurance against loss of or damage to a land vehicle ..., and against any loss, liability, or expense resulting from or incidental to ownership, maintenance, or use of the vehicle, ...; and provision for medical, hospital, surgical, disability benefits to injured persons and funeral and death benefits to dependents, beneficiaries, or personal representatives of persons killed,

LAW OFFICES
MICHAEL J. SCHNEIDER, P.C.
880 "N" STREET, SUITE 202
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 277-9306
FAX (907) 274-8201

*Complaint - Widby v. State Farm*

**PAGE** 5 **EXHIBIT** C

5

irrespective of legal liability to the insured, if issued as an incidental coverage with or supplemental to insurance on the vehicle, ...;

(2) liability insurance: insurance against legal liability for the death, injury or disability of a human being, or for damage to property; and provision of medical, hospital, surgical, disability benefits to injured persons and funeral and death benefits to dependents, beneficiaries or personal representatives of persons killed, irrespective of legal liability of the insured, if issued as an incidental coverage with or supplemental to liability insurance;

***

(14) miscellaneous: insurance against any other kind of loss, damage, or liability properly a subject of insurance and not within another kind of insurance as defined in this chapter, if the insurance is not disapproved by the director as being contrary to law or public policy.

24. *Black's Law Dictionary*, Fifth Edition, (1979), defines "Casualty Insurance" as

> That type of insurance that is primarily concerned with losses caused by injuries to persons and legal liability opposed upon the insurer for such injury or for damage to the property of others.

Id. at 721 and see Exhibit 5.

25. State Farm's Endorsement 6127BN is separately affixed hereto as Exhibit 6 and incorporated herein by reference. Defendants contend that this endorsement is enforceable.

26. Widby, on the other hand, contends that this endorsement is unenforceable as it violates the appraisal and arbitration provisions set forth in AS 21.89.035 and that the offending endorsement further forces Widby to assert his claim, to his detriment and prejudice, before he otherwise wishes to do so, limited only by the contract statute of limitations.

27. The parties are entitled to a declaration of their rights and, should Mr. Widby succeed, to an order reforming Exhibits 1 and 3 to the terms with regard to UIM dispute

LAW OFFICES
MICHAEL J. SCHNEIDER, P.C.
880 "N" STREET, SUITE 202
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 277-9306
FAX (907) 274-8201

PAGE _6_ EXHIBIT _C_

*Complaint - Widby v. State Farm*

6

resolution contained in Exhibit 2, and to a further mandatory injunction directing that the parties comply with any demand for arbitration consistent with the terms of Exhibit 2 and Alaska's Uniform Arbitration Act, as relates to Mr. Widby's UIM claim.

## V. Second Cause of Action In the Alternative—For UIM Benefits

28.    The following allegations are set forth as an alternative claim only and only for the purpose of preserving Mr. Widby's rights under Exhibits 1 and 3 should he fail to prevail in his request for declaratory and injunctive relief.

29.    Mr. Widby has suffered damages as a direct and proximate result of the negligence of Schonel Sharp in amounts greater than his recoveries to date, same to be proved at trial with specificity, but which are, to the best of his knowledge and belief, at least $100,000.00.

30.    Mr. Widby's damages flowing from the accident and as to which the policies, Exhibits 1 and/or 2 and/or 3, may be exposed, include the following past and future losses:

A.    Pain, suffering, and emotional distress;

B.    Loss of enjoyment of life;

C.    Surgical scarring; and

D.    Medical expenses.

The damages will be proved with specificity at trial, but should exceed his insurance recoveries to date by $100,000.00 or more.

31.    The crash in question was solely the fault of Schonel Sharp.

32.    Mr. Widby was fault free in causing the collision, his injuries, or any of the resulting damages claimed herein or previously.

33.    As a direct and proximate result of the conduct complained of above, Plaintiff has suffered "severe permanent physical impairment or severe disfigurement" within the meaning of AS 09.17.010 (c).

34.    Plaintiff has, to the extent required by law, mitigated his damages.

35.    No person not now named in the caption hereof should be allocated a percentage of

LAW OFFICES
MICHAEL J. SCHNEIDER, P.C.
880 "N" STREET, SUITE 202
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 277-9306
FAX (907) 274-8201

PAGE ___7___ EXHIBIT _C_

*Complaint - Widby v. State Farm*

7

fault under AS 09.17.080 or otherwise.

## VI. **Prayer as to Count I**

Mr. Widby prays for judgment against Defendants as follows:

A.      Declaring that State Farm's Endorsement 6127BN is in violation of AS 21.89.035, and, therefore, unenforceable;

B.      Reforming the UIM dispute resolution and award provisions of Exhibits 1 and 3 to the terms of Exhibit 2;

C.      For an order directing the parties to comply with a demand for arbitration submitted by either of them in accordance with the reformed policy and/or the provisions of Alaska's Uniform Arbitration Act;

D.      For costs of suit and attorney fees; and

E.      For such other and further relief as the Court deems appropriate under the circumstances.

## VII. **Prayer as to Count II**

Mr. Widby prays for a judgment against State Farm for his underinsured motorist damages cognizable under Alaska's statutory scheme and the State Farm policies (Exhibits 1-3), but only to the extent those policies are consistent with, and not in derogation of, the statutory scheme. This sum to be proved at trial, but in excess of $100,000.00.

For costs of suit and attorney fees.

For such other and further relief as the Court deems appropriate under the circumstances.

DATED this 30 day of _____ May _____, 2008.

LAW OFFICES
MICHAEL J. SCHNEIDER, P.C.

Michael J. Schneider
Attorney for Plaintiff
Alaska Bar No. 7510088

LAW OFFICES
MICHAEL J. SCHNEIDER, P.C.
880 "N" STREET, SUITE 202
ANCHORAGE, ALASKA 99501
TELEPHONE (907) 277-9306
FAX (907) 274-8201

*Complaint - Widby v. State Farm*

**PAGE** 8    **EXHIBIT** C    8

# State Farm Insurance Companies 

Anchorage Operations Center
P O Box 221
DuPont, WA 98327
(907) 261-3700
Toll Free: (800) 478-3510
Fax: (877)-449-5794

## CERTIFICATE OF COVERAGE

The undersigned is a Team Manager for the State Farm Mutual
Automobile Insurance Company of Bloomington, Illinois.

This certifies that policy number 0130-976-02 covering a 2000
Toyota 4 Runner Sport Wg, was issued to Kristine Widby and was in
effect on the accident date of June 1, 2006.  The coverages and
limits of liability for this policy on that date were:

Liability-Bodily Injury $100,000 each person/$300,000
each accident; Property Damage $50,000
Medical Payments Per Person $25,000
Comprehensive, deductible of $100
Collision, deductible of $250
Emergency Road Service
Car Rental and Travel Expense 80%/$500
Uninsured/Underinsured Motorist $100,000 each person/
$300,000 each accident; Uninsured Property Damage
$25,000
Endorsements:  6091, 6893QQ, 6902, 6102NN, 6902.1,
6127BN

Policy Form: 9802.3

David Fletcher
Team Manager

State of Alaska
County of Third Judicial District

Subscribed and sworn to before me this 8th day of May 2008

Carrie A Clark

Residing In: Anchorage, AK

My Commission Expires:

7/9/2009

HOME OFFICES:  BLOOMINGTON, ILLINOIS 61710-0001

Page 2
May 8, 2008

9-18

# 6902.1 AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **REPORTING A CLAIM — INSURED'S DUTIES**

   Item 2. is changed to read:

   **2. Notice to Us of Claim or Suit**

   If a claim or suit is made against an *insured*, that *insured* must at once send us every demand, notice or claim made and every summons or legal process received. That *insured* also shall answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers. That *insured* has the right to have an attorney present when answering questions under oath.

2. **SECTION I – LIABILITY – COVERAGE A**

   a. Item 4.a. under the sentence that reads:

   In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident.

   is changed to read:

   4. Expenses incurred by an *insured*:

   a. for loss of wages or salary up to $100 per day if we ask the *insured* to attend the trial of a civil suit.

   b. The **Trailer Coverage** provision is changed to read:

   **Trailer Coverage**

   The liability coverage extends to the ownership, maintenance or use, by an *insured*, of:

   1. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below.

   Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

   These trailers are not described in the declarations and no extra premium is charged.

   2. the following trailers only if they are described on the declarations page and extra premium is paid:

   a. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

   (1) if designed to carry *persons*; or

   (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

   (3) while used as premises for office, store or display purposes; or

   b. trailers not designed to be pulled by a *private passenger car* or a *utility vehicle*.

   When we refer to trailer coverage, *insured* means:

   1. *you*;

   2. *your spouse*;

   3. the *relatives* of the first *person* named in the declarations;

   4. any other *person* while using *your car*, a *newly acquired car* or a *temporary substitute car*, if its use is within the

Case 3:08-cv-00144-TMB   Document 1-4   Filed 06/25/08   Page 11 of 25

scope of consent of *you* or *your spouse*; and

5. any other *person* or organization liable for the use of a covered trailer by one of the above *insureds*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

3. **SECTION III — UNINSURED AND UNDERINSURED MOTOR VEHICLE — COVERAGE U AND UNINSURED AND UNDERINSURED MOTOR VEHICLE — COVERAGE U1**

a. **UNINSURED AND UNDERINSURED MOTOR VEHICLE – COVERAGE U**

The second paragraph is changed to read:

We will pay compensatory damages for *bodily injury* and *property damage* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle* or an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* or *property damage* must be caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle* or an *underinsured motor vehicle*.

b. **UNINSURED AND UNDERINSURED MOTOR VEHICLE – COVERAGE U1**

The second paragraph is changed to read:

We will pay compensatory damages for *bodily injury* an *insured* is legally entitled to collect from the owner or driver of an *uninsured motor vehicle* or an *underinsured motor vehicle*. The *bodily injury* must be sustained by an *insured* and caused by accident arising out of the operation, maintenance or use of an *uninsured motor vehicle* or an *underinsured motor vehicle*.

c. The following is added to **When Coverages U and U1 Do Not Apply:**

THERE IS NO COVERAGE FOR PUNITIVE OR EXEMPLARY DAMAGES.

4. **SECTION IV — PHYSICAL DAMAGE COVERAGES**

a. The following is added to the definition of *Loss*:

*Loss* does not include any reduction in the value of any vehicle or detachable living quarters after it has been repaired, as compared to its value before it was damaged.

b. The provision titled **COMPREHENSIVE – COVERAGE D** is changed to read:

**COMPREHENSIVE – COVERAGE D.** *You* have this coverage if "D" appears in the "Coverages" space on the declarations page. If a deductible applies, the amount is shown by the number beside "D".

1. Loss to Your Car. We will pay for *loss* to *your car* EXCEPT *LOSS* CAUSED BY *COLLISION* but only for the amount of each such *loss* in excess of the deductible amount, if any. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

Breakage of glass or *loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

2. We will pay *you* for transportation costs incurred if *your car* is stolen. We will pay up to $25 per day beginning when *you* tell us of the theft and ending when we offer to pay for the *loss*.

If the daily incurred transportation costs are payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most. If payments have been made under Car Rental and Travel Expenses Coverage and such payments have either exhausted the total amount payable under Car Rental Expense or reduced the total amount payable under Car Rental Expense to less than $25, then we will pay under Comprehensive Coverage.

6902.1

c. The following is added to **COLLISION – COVERAGE G**:

*Loss* caused by *collision* does not include *loss* due to:

1. missiles or falling objects;
2. windstorm or hail;
3. earthquake, water or flood;
4. theft or larceny;
5. malicious mischief or vandalism; or
6. riot or civil commotion.

d. The first paragraph of **Limit of Liability – Comprehensive and Collision Coverages** is changed to read:

The limit of our liability for *loss* to property or any part of it is the lower of:

1. the actual cash value; or
2. the cost of repair or replacement. The cost of repair or replacement does not include any reduction in the value of the property after it has been repaired, as compared to its value before it was damaged.

e. The following is added to **EMERGENCY ROAD SERVICE – COVERAGE H**:

We will pay the fair cost *you* incur for *your car* for locksmith services, up to one hour, to open *your car* if *your* key is lost, stolen or locked inside *your car*. We will pay only the cost of labor.

f. **CAR RENTAL EXPENSE – COVERAGE R**

The paragraph that reads:

Any car rent payable under this coverage is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

is changed to read:

If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental Expense Coverage, we will pay only under the one coverage where *you* collect the most.

g. **CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1**

(1) The paragraph that reads:

Any car rent payable under this coverage is REDUCED TO THE

EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

is changed to read:

If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most.

(2) The provision in the policy booklet titled **Total Amount of Expenses Payable – Coverage R1** is changed to read:

**Total Amount of Expenses Payable – Coverage R1**

1. The most we will pay for "Car Rental Expense" incurred in any one occurrence is $400.
2. The most we will pay for "Travel Expenses" incurred by all *persons* in any one occurrence is $400.
3. The most we will pay for "Rental Car – Repayment of Deductible Amount Expense" incurred in any one occurrence is $400.

h. **Trailer Coverage**

The paragraph which reads:

The most we will pay under the comprehensive or collision coverage for a *loss* to such non-owned trailer or unit is $500.

is changed to read:

The most we will pay under the comprehensive or collision coverage for a *loss* to such non-owned trailer or unit is $2500.

4. **CONDITIONS**

**Policy Terms** under **Policy Changes** is changed to read:

1. **Policy Changes**

   a. **Policy Terms.** The terms of this policy may be changed or waived only by:

      (1) an endorsement issued by us; or

      (2) the revision of this policy form to give broader coverage

without an extra charge. If any coverage *you* carry is changed to give broader coverage, we will give *you* the broader coverage without the issuance of a new policy as of the date we make the change effective.

Page 4 of 4

6902.1

## 6102NN AMENDMENT OF DEFINED WORDS, LIABILITY, MEDICAL PAYMENTS AND PHYSICAL DAMAGE COVERAGES

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

### 1. DEFINED WORDS

The following definition is added:

*Fungi* – means any type or form of fungus or fungi and includes:

1. mold;

2. mildew; and

3. any of the following that are produced or released by fungi:

    a. mycotoxins;

    b. spores;

    c. scents; or

    d. byproducts.

### 2. SECTION I — LIABILITY — COVERAGE A

Under the paragraph that reads "In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident":

a. item 3.c. is deleted.

b. item 4. is changed to read (This replaces item 2.a. of endorsement 6902):

    4. The following costs and expenses if related to and incurred after a civil lawsuit has been filed against an *insured* for damages for which liability coverage is provided by this policy:

        a. loss of wages or salary, but not other income, up to $100 for each day an *insured* attends at our request:

(1) an arbitration;

(2) a mediation; or

(3) a trial of a civil suit.

b. reasonable expenses incurred by an *insured* at our request, other than loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to us before we will pay.

### 3. SECTION II — MEDICAL PAYMENTS — COVERAGE C

The following is added to **What Is Not Covered**:

a. THERE IS NO COVERAGE FOR *BODILY INJURY* FOR WHICH THE DOMINANT CAUSE IS *FUNGI*.

b. THERE IS NO COVERAGE FOR *BODILY INJURY* FOR WHICH THE DOMINANT CAUSE IS:

(1) NUCLEAR REACTION;

(2) RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

(3) THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

6102NN

Case 3:08-cv-00144-TMB   Document 1-4   Filed 06/25/08   Page 15 of 25

**4. SECTION IV — PHYSICAL DAMAGE COVERAGES**

The following is added to **When The Physical Damage Coverages Do Not Apply**:

a. THERE IS NO COVERAGE FOR *LOSS* FOR WHICH THE DOMINANT CAUSE IS *FUNGI*. WE WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY COSTS REQUIRED TO REPAIR ANY VEHICLE THAT ARE DUE TO THE EXISTENCE OF *FUNGI* IF THE DOMINANT CAUSE OF *LOSS* IS *FUNGI*.

b. THERE IS NO COVERAGE FOR *LOSS* TO ANY VEHICLE FOR WHICH THE DOMINANT CAUSE IS:

(1) NUCLEAR REACTION;

(2) RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

(3) THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE.

6102NN

# 6902 AMENDATORY ENDORSEMENT

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that *your* policy is changed as follows:

1. **REPORTING A CLAIM — INSURED'S DUTIES**

    Item 2. is changed to read:

    **2. Notice to Us of Claim or Suit**

    If a claim or suit is made against an *insured*, that *insured* must at once send us every demand, notice or claim made and every summons or legal process received. That *insured* also shall answer questions under oath when asked by anyone we name, as often as we reasonably ask, and sign copies of the answers. That *insured* has the right to have an attorney present when answering questions under oath.

2. **SECTION I – LIABILITY – COVERAGE A**

    a. Item 4.a. under the sentence that reads:

    In addition to the limits of liability, we will pay for an *insured* any costs listed below resulting from such accident.

    is changed to read:

    4. Expenses incurred by an *insured*:

    a. for loss of wages or salary up to $100 per day if we ask the *insured* to attend the trial of a civil suit.

    b. The **Trailer Coverage** provision is changed to read:

    **Trailer Coverage**

    The liability coverage extends to the ownership, maintenance or use, by an *insured*, of:

    1. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*, except those trailers in 2.a. below.

       Farm implements and farm wagons are considered trailers while pulled on public roads by a *car* we insure for liability.

    These trailers are not described in the declarations and no extra premium is charged.

    2. the following trailers only if they are described on the declarations page and extra premium is paid:

       a. trailers designed to be pulled by a *private passenger car* or a *utility vehicle*:

          (1) if designed to carry *persons*; or

          (2) while used with a motor vehicle whose use is shown as "commercial" on the declarations page (trailers used only for pleasure use are covered even if not described and no extra premium paid); or

          (3) while used as premises for office, store or display purposes; or

       b. trailers not designed to be pulled by a *private passenger car* or a *utility vehicle*.

    When we refer to trailer coverage, *insured* means:

    1. *you*;

    2. *your spouse*;

    3. the *relatives* of the first *person* named in the declarations; or

    4. any other *person* while using *your car*, a *newly acquired car* or a *temporary substitute car*, if its use is within the scope of consent of *you* or *your spouse*; and

6902

5.  any other *person* or organization liable for the use of a covered trailer by one of the above *insureds*.

THERE IS NO COVERAGE WHEN A TRAILER IS USED WITH A MOTOR VEHICLE THAT IS NOT COVERED UNDER THE LIABILITY COVERAGE OF THIS POLICY.

3.  **SECTION IV — PHYSICAL DAMAGE COVERAGES**

    a.  The following is added to the definition of *Loss*:

    *Loss* does not include any reduction in the value of any vehicle or detachable living quarters after it has been repaired, as compared to its value before it was damaged.

    b.  The provision titled COMPREHENSIVE – COVERAGE D is changed to read:

    COMPREHENSIVE – COVERAGE D. *You* have this coverage if "D" appears in the "Coverages" space on the declarations page. If a deductible applies, the amount is shown by the number beside "D".

    1.  Loss to Your Car. We will pay for *loss* to *your car* EXCEPT *LOSS* CAUSED BY *COLLISION* but only for the amount of each such *loss* in excess of the deductible amount, if any. If we offer to pay for the repair of damaged windshield glass instead of the replacement of the windshield and *you* agree to have such repair made, we will pay the full cost of repairing the windshield glass regardless of *your* deductible.

    Breakage of glass or *loss* due to hitting or being hit by a bird or an animal is payable under this coverage.

    2.  We will pay *you* for transportation costs incurred if *your car* is stolen. We will pay up to $25 per day beginning when *you* tell us of the theft and ending when we offer to pay for the *loss*.

    If the daily incurred transportation costs are payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most. If payments have been made under Car Rental and Travel Expenses Coverage and such payments have either exhausted the total amount payable under Car Rental Expense or reduced the total amount payable under Car Rental Expense to less than $25, then we will pay under Comprehensive Coverage.

    c.  The following is added to COLLISION – COVERAGE G:

    *Loss* caused by *collision* does not include *loss* due to:

    1.  missiles or falling objects;
    2.  windstorm or hail;
    3.  earthquake, water or flood;
    4.  theft or larceny;
    5.  malicious mischief or vandalism; or
    6.  riot or civil commotion.

    d.  The first paragraph of **Limit of Liability – Comprehensive and Collision Coverages** is changed to read:

    The limit of our liability for *loss* to property or any part of it is the lower of:

    1.  the actual cash value; or
    2.  the cost of repair or replacement. The cost of repair or replacement does not include any reduction in the value of the property after it has been repaired, as compared to its value before it was damaged.

    e.  The following is added to **EMERGENCY ROAD SERVICE – COVERAGE H**:

    We will pay the fair cost *you* incur for *your car* for locksmith services, up to one hour, to open *your car* if *your* key is lost, stolen or locked inside *your car.* We will pay only the cost of labor.

    f.  **CAR RENTAL EXPENSE – COVERAGE R**

    The paragraph that reads:

    Any car rent payable under this coverage is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

6902

is changed to read:

> If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental Expense Coverage, we will pay only under the one coverage where *you* collect the most.

g. **CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1**

(1) The paragraph that reads:

> Any car rent payable under this coverage is REDUCED TO THE EXTENT IT IS PAYABLE UNDER COMPREHENSIVE.

is changed to read:

> If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the one coverage where *you* collect the most.

(2) The provision in the policy booklet titled **Total Amount of Expenses Payable – Coverage R1** is changed to read:

> **Total Amount of Expenses Payable – Coverage R1**
>
> 1. The most we will pay for "Car Rental Expense" incurred in any one occurrence is $400.
>
> 2. The most we will pay for "Travel Expenses" incurred by all *persons* in any one occurrence is $400.

3. The most we will pay for "Rental Car – Repayment of Deductible Amount Expense" incurred in any one occurrence is $400.

h. **Trailer Coverage**

The paragraph which reads:

> The most we will pay under the comprehensive or collision coverage for a *loss* to such non-owned trailer or unit is $500.

is changed to read:

> The most we will pay under the comprehensive or collision coverage for a *loss* to such non-owned trailer or unit is $2500.

4. CONDITIONS

Policy Terms under **Policy Changes** is changed to read:

1. **Policy Changes**

   a. **Policy Terms.** The terms of this policy may be changed or waived only by:

      (1) an endorsement issued by us; or

      (2) the revision of this policy form to give broader coverage without an extra charge. If any coverage *you* carry is changed to give broader coverage, we will give *you* the broader coverage without the issuance of a new policy as of the date we make the change effective.

*Edward B Rust, Jr*

Chief Executive Officer

## 6893QQ AMENDMENT OF CAR RENTAL AND TRAVEL EXPENSES COVERAGES

This endorsement is a part of *your* policy. Except for the changes it makes, all other terms of the policy remain the same and apply to this endorsement. It is effective at the same time as *your* policy unless a different effective date is specified by us in writing.

In consideration of the premium charged, it is agreed that **SECTION IV — PHYSICAL DAMAGE COVERAGES** of *your* policy is changed as follows:

**CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R1** and **CAR RENTAL AND TRAVEL EXPENSES — COVERAGE R2** are deleted and replaced by the following:

**CAR RENTAL AND TRAVEL EXPENSES – COVERAGE R1.** *You* have this coverage if "R1" appears in the "Coverages" space on the declarations page.

1. **Car Rental Expense.**

   a. If:

      (1) a dollar amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* the daily rental charge up to that dollar amount; or

      (2) a percentage amount is shown under "Limits of Liability – Car Rental Expense, Each Day" on the declarations page, we will pay *you* that percentage of the daily rental charge

   when *you* rent a *car* from a car rental agency or *car business*. "Daily rental charge" means the daily rental rate plus charges for mileage and related taxes.

   If *you* choose not to rent a *car*, we will pay *you* $10 for each complete 24 hour period that *your car* is not drivable. *You* must report to us the period of time that *your car* was not drivable.

We will pay only if *your car* is not drivable because of a *loss* which would be payable under coverage D or G.

   b. Payment will be made for a period that:

      (1) starts:

         (a) when *your car* is not drivable due to the *loss*; or

         (b) if *your car* is drivable, when *you* leave it at the shop for agreed repairs; and

      (2) ends:

         (a) when *your car* has been repaired or replaced; or

         (b) when we offer to pay for the *loss*, if *your car* is repairable but *you* choose to delay repairs; or

         (c) five days after we offer to pay for the *loss* if:

            (i) *your car* was stolen and not recovered; or

            (ii) we declare that *your car* is a total loss;

      whichever comes first.

If the incurred daily rental charge is payable under both Comprehensive Coverage and Car Rental and Travel Expenses Coverage, we will pay only under the

6893QQ

one coverage where *you* collect the most.

2. **Travel Expenses.** If *your car* is not drivable due to a *loss* which occurs more than 50 miles from home and which would be payable under coverage D or G, we will pay *you* for expenses incurred by *you, your spouse* and any *relative* for:

   a. commercial transportation fares to continue to *your* destination or home;

   b. extra meals and lodging needed when the *loss* to *your car* causes a delay enroute. The expenses must be incurred between the time of the *loss* and *your* arrival at *your* destination or home or by the end of the fifth day, whichever occurs first; and

   c. meals, lodging and commercial transportation fares incurred by *you* or a *person you* choose to drive *your car* from the place of repair to *your* destination or home.

3. **Rental Car – Repayment of Deductible Amount Expense.** We will pay the expense of any deductible amount *you* are required to pay the owner under comprehensive or collision coverage in effect on a substitute *car* rented from a car rental agency or *car business.*

**Total Amount of Expenses Payable – Coverage R1**

1. The most we will pay for "Car Rental Expense" incurred in any one occurrence is shown on the declarations page under "Limits of Liability – Car Rental Expense, Each Occurrence".

2. The most we will pay for "Travel Expenses" incurred by all *persons* in any one occurrence is $400.

3. The most we will pay for "Rental Car – Repayment of Deductible Amount Expense" incurred in any one occurrence is $400.

*Edward B Rust Jr*

Chief Executive Officer

2

6893QQ

PLEASE READ YOUR POLICY CAREFULLY. IF YOU HAVE AN ACCIDENT, CONTACT YOUR STATE FARM AGENT OR ONE OF OUR CLAIM OFFICES AT ONCE. (SEE "REPORTING A CLAIM-INSURED'S DUTIES" IN THIS POLICY.)

Authorized Representative

State Farm Mutual Automobile Insurance Company. Home Office, Bloomington, Illinois

Pacific Northwest Office • 4600 25th Avenue Northeast • Salem. Oregon 97313-1000

# YOUR
# STATE FARM
# CAR
# POLICY

Alaska
Policy Form 9802.3

We defir
makes it
are print
easily.

*Bodily In*
sickness,

*Car* – m
wheels, v
roads. It

   1. a
      i

   2. a
      s

*Car Bus*
purpose
store or p

*Insured*
defined a
informat
rect or i
period, S
mium d
provision
of this pe

*Loss* – d

*Newly A*
an *additi*

  *Repl*
  lease
  This
  *repla*

    1

    2

  *Addi*
  by or
  will
  if:

    1

    2

2
8023

# STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
## BLOOMINGTON, ILLINOIS
### A MUTUAL COMPANY

## DEFINED WORDS
## WHICH ARE USED IN SEVERAL PARTS OF THE POLICY

We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics. *You* can pick them out easily.

*Bodily Injury* – means bodily injury to a *person* and sickness, disease or death which results from it.

*Car* – means a land motor vehicle with four or more wheels, which is designed for use mainly on public roads. It does not include:

1. any vehicle while located for use as a dwelling or other premises; or

2. a truck-tractor designed to pull a trailer or semitrailer.

*Car Business* – means a business or job where the purpose is to sell, lease, repair, service, transport, store or park land motor vehicles or trailers.

*Insured* – means the *person*, *persons* or organization defined as *insureds* in the specific coverage. If the information *you* have provided State Farm is incorrect or incomplete, or changes during the policy period, State Farm may decrease or increase the premium during the policy period as set out in the provision titled *Premium* of the Conditions section of this policy.

*Loss* – defined in Sections IV and V.

*Newly Acquired Car* – means a *replacement car* or an *additional car*.

*Replacement Car* – means a *car* purchased by or leased to *you* or *your spouse* to replace *your car*. This policy will only provide coverage for the *replacement car* if *you* or *your spouse*:

1. tell us about it within 30 days after its delivery to *you* or *your spouse*; and

2. pay us any added amount due.

*Additional Car* – means an added *car* purchased by or leased to *you* or *your spouse*. This policy will only provide coverage for the *additional car* if:

1. it is a *private passenger car* and we insure all other *private passenger cars*; or

2. it is other than a *private passenger car* and we insure all *cars*

owned by or leased to *you* or *your spouse* on the date of its delivery to *you* or *your spouse*.

This policy provides coverage for the *additional car* only until the earlier of:

1. 12:01 A.M. Standard Time at the address shown on the declarations page on the 31st day after the delivery of the *car* to *you* or *your spouse*; or

2. the effective date and time of a policy issued by us or any other company that describes the *car* or its declarations page.

*You* or *your spouse* may apply for a policy that will provide coverage beyond the 30th day for the *additional car*. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of application.

If a *newly acquired car* is not otherwise afforded comprehensive or collision coverage by this or any other policy, this policy will provide the comprehensive or collision coverage provided for the *newly acquired car*. If such coverage is provided by this paragraph, it will apply only until 12:01 A.M. Standard Time at the address shown on the declarations page on the sixth day after the delivery of the *car* to *you* or *your spouse*. Any comprehensive or collision coverage provided by this paragraph is subject to a deductible of $500.

*Non-Owned Car* – means a *car* not owned by, registered to or leased to:

1. *you, your spouse*;

2. any *relative* unless at the time of the accident or *loss*:

   a. the *car* currently is or has within the last 30 days been insured for liability coverage; and

   b. the driver is an *insured* who does not own or lease the *car*;

3. any other *person* residing in the same household as *you, your spouse* or any *relative*; or

4. an employer of *you, your spouse* or any *relative*.

3
8023

Case 3:08-cv-00144-TMB    Document 1-4    Filed 06/25/08    Page 24 of 25

*Non-owned car* does not include a *car* which has been operated by or in the possession of an *insured* during any part of each of the last 21 or more consecutive days. If the *insured* is an *insured* under one or more other car policies issued by us, the 21 day limit is increased by an additional 21 days for each such additional policy.

A *non-owned car* must be a *car* in the lawful possession of the *person* operating it.

*Non-owned car* includes a "rented motor vehicle" as described in AS 21.89.020, subsection (f) of the Alaska Laws.

*Occupying* – means in, on, entering or alighting from.

*Person* – means a human being.

*Private Passenger Car* – means a *car:*

1. with four wheels;

2. of the private passenger or station wagon type; and

3. designed solely to carry *persons* and their luggage.

*Relative* – means a *person* related to *you* or *your spouse* by blood, marriage or adoption who resides primarily with *you.* It includes *your* unmarried and unemancipated child away at school.

*Spouse* – means *your* husband or wife who resides primarily with *you.*

*Temporary Substitute Car* – means a *car* not owned by or leased to *you* or *your spouse,* if it replaces *your car* for a short time. Its use has to be with the consent of the owner. *Your car* has to be out of use due to its breakdown, repair, servicing, damage or *loss.* A *temporary substitute car* is not considered a *non-owned car.*

*Utility Vehicle* – means a motor vehicle with:

1. a pickup, panel or van body; and

2. a Gross Vehicle Weight of 10,000 pounds or less.

*You* or *Your* – means the named insured or named insureds shown on the declarations page.

*Your Car* – means the *car* or the vehicle described on the declarations page.

## DECLARATIONS CONTINUED

We, the State Farm Mutual Automobile Insurance Company, agree to insure *you* according to the terms of this policy based:

1. on *your* payment of premium for the coverages *you* chose; and

2. in reliance on *your* statements in these declarations.

*You* agree, by acceptance of this policy that:

1. the statements in these declarations are *your* statements and are true; and

2. we insure *you* on the basis *your* statements are true; and

3. this policy contains all of the agreements between *you* and us or any of our agents.

Unless otherwise stated in the exceptions space on the declarations page, *your* statements are:

1. Ownership. *You* are the sole owner of *your car.*

2. Insurance and License History. Neither *you* nor any member of *your* household within the past three years has had:

   a. vehicle insurance canceled by an insurer; or

   b. a license to drive or vehicle registration suspended, revoked or refused.

3. Use. *Your car* is used for pleasure and business.

## WHEN AND WHERE COVERAGE APPLIES

### When Coverage Applies

The coverages *you* chose apply to accidents and *losses* that take place during the policy period.

The policy period is shown under "Policy Period" on the declarations page and is for successive periods of six months each for which *you* pay the renewal premium. Payments must be made on or before the end of the current policy period. The policy period begins and ends at 12:01 A.M. Standard Time at the address shown on the declarations page.

### Where Coverage Applies

The coverages *you* chose apply:

1. in the United States of America, its territories and possessions or Canada; or

4
8023